**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTHONY DALE, ET AL.,<br><br>Plaintiffs,<br>v.<br><br>EDWARD E. MCNALLY.,<br><br>Defendant. | Case No. 1:26-cv-09778<br><br>Hon. Thomas M. Durkin<br><br>Magistrate Albert Berry III |

**NON-PARTY EDWARD E. MCNALLY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

KASOWITZ LLP

1633 Broadway
New York, New York 10019
Tel: (212) 506-1700

- and -

ARONBERG GOLDGEHN

225 W. Washington Street
Suite 2800
Chicago, Illinois 60606
Tel: (312) 828-9600

*Counsel for Non-Party Edward E. McNally*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1
BACKGROUND .......... 3
I. The Appointment And Role Of The Monitoring Trustee .......... 3
II. The Action .......... 4
III. The Subpoenas To The Trustee .......... 5
LEGAL STANDARDS .......... 7
ARGUMENT .......... 8
I. Production Of The Reports Would Impose An Undue Burden .......... 8
A. The Trustee's Analyses And Conclusions In The Reports Are Not Relevant .......... 9
B. The Time Period For The Subpoena Is Overbroad .......... 13
II. Production Of The Reports Is Not Proportional To The Needs Of The Case .......... 13
III. The Dale Plaintiffs Cannot Use The Trustee As Their Unretained Expert .......... 15
CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ameritox Ltd. v. Millennium Labs., Inc.*,
No. 12-cv-7493, 2012 WL 6568226 (N.D. Ill. Dec. 14, 2012)....7, 9

*Craigville Tel. Co. v. T-Mobile USA, Inc.*,
No. 19-cv-7190, 2022 WL 17740419 (N.D. Ill. Dec. 16, 2022)....7, 8, 9

*Eternity Mart, Inc. v. Nature's Sources, LLC*,
No. 19-cv-02436, 2019 WL 6052366 (N.D. Ill. Nov. 15, 2019)....8, 10

*Little v. JB Pritzker for Governor*,
No. 18-C-6954, 2020 WL 1939358, (N.D. Ill. Apr. 22, 2020)....8

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*,
No. 17-C-8816, 2021 WL 4935162 (N.D. Ill. Jun. 10, 2021)....7, 13

*Solar Sources, Inc. v. United States*,
142 F.3d 1033 (7th Cir. 1998)....14

*Tresóna Multimedia, LLC v. Legg*,
No. 15-C-4834, 2015 WL 4911093 (N.D. Ill. Aug. 17, 2015)....13

*United States ex rel. Tyson v. Amerigroup Illinois, Inc.*,
No. 02-C-6074, 2005 WL 3111972 (N.D. Ill. Oct. 21, 2005)....7

*Yost v. Carroll*,
No. 20-C-5393, 2022 WL 3594643 (N.D. Ill. Aug. 23, 2022)....10, 15

**Statutes**

5 U.S.C. § 552(b)(7)(A)....14

**Other Authorities**

Fed. R. Civ. P. 26(b)....8

Fed. R. Civ. P. 45....2, 7, 8, 15

Non-Party Edward E. McNally ("Mr. McNally"), by his attorneys, Kasowitz LLP and Aronberg Goldgehn, respectfully submits this opposition to the Dale Plaintiffs' July 22, 2026 Motion to Compel Compliance with Subpoena (Dkt. 1, "Motion" or "Mot.").[1]

## PRELIMINARY STATEMENT

The Dale Plaintiffs move to compel Mr. McNally—the Monitoring Trustee appointed by the United States District Court for the District of Columbia, upon the motion of the United States Department of Justice ("DOJ"), charged with overseeing the compliance obligations of T-Mobile and Sprint following their merger (the "Trustee")—to produce the confidential monthly reports that the Trustee provides to DOJ (the "Reports), pursuant to the terms of the Final Judgment entered in April 2020 ("Final Judgment"). The Reports are provided only to DOJ, on a confidential basis, and are not provided to T-Mobile or any other entity, even though T-Mobile pays the Trustee's fees under the Final Judgment.

The Final Judgment provides that any confidential Reports do not have to be filed on the docket, and since the creation of the office of the Trustee some six years ago, all Reports have been maintained as confidential by both DOJ and the Trustee, and no Report has ever been filed or otherwise disclosed publicly. The Dale Plaintiffs' effort to invade these confidential materials should be rejected.

To begin with, the Dale Plaintiffs already possess a universe of documents that covers a wider footprint than the Reports requested here and have failed to demonstrate any legitimate or authorized need for the confidential Reports in question. Mr. McNally understands the Dale Plaintiffs have already received—through discovery in the Action—copies of T-Mobile's and

[1] "Dale Plaintiffs" refers to Anthony Dale, Brett Jackson, Johnna Fox, Benjamin Borrowman, Ann Lambert, Robert Anderson, and Chad Hohenbery, who are the named plaintiffs in the underlying putative class action captioned *Dale et al. v. Deutsche Telekom AG et al.*, No. 22-3189 (N.D. Ill.) ("Action"). All citations to "*Dale* Dkt." are to the docket in the Action. All emphasis is supplied unless otherwise noted.

DISH Network's ("DISH") communications with the Trustee and information that T-Mobile and DISH have provided to the Trustee. And the Dale Plaintiffs have also obtained internal DISH documents that the Trustee did not receive and has not analyzed.

But the Dale Plaintiffs erroneously claim that this mountain of information that they have already received is still not enough. Seeking to use Mr. McNally and his team as their unretained experts, the Dale Plaintiffs move to compel production of the Trustee's assessments of data and documents that they already possess.

The Dale Plaintiffs have never been able to articulate—aside from pure conjecture—why they believe the Trustee's confidential analyses and conclusions as contained in the Reports are relevant to the claims or defenses in the Action, and they fail to do so in the Motion. The Dale Plaintiffs plainly seem to think that the Reports contain something they do not. And, they even rejected the Trustee's offer to produce a declaration stating whether the Reports found that T-Mobile and DISH had complied with the court-ordered obligations that the Trustee monitors under the Final Judgment.

Compelling production of the Reports would impose an undue burden on Mr. McNally as a non-party, would violate the fundamental expectation of confidentiality under which the Trustee, his teams of experts and the United States have operated for over six years, and would risk adversely impacting the ongoing work, candor, and practices of this Trustee and of other current and future Court and DOJ-appointed monitors.

Because the Dale Plaintiffs have failed to "take reasonable steps to avoid imposing undue burden" (under Federal Rule of Civil Procedure 45), and because non-parties like the Trustee here are entitled to greater protection in the discovery process than parties, the Motion should be denied.

## BACKGROUND

### I. The Appointment and Role of the Monitoring Trustee

On July 26, 2019, DOJ and several states filed a civil antitrust complaint challenging the merger of T-Mobile and Sprint, claiming that the merger of the nation's third and fourth largest wireless carriers would extinguish competition for retail mobile wireless services in violation of Section 7 of the Clayton Act. (*See* Mot. at 6-7.) The District Court ultimately entered the Final Judgment on April 1, 2020 (which was subsequently amended on October 23, 2023), which required significant divestitures and ongoing compliance obligations designed to preserve competition in the mobile wireless market and enable DISH to enter the market as another national facilities-based mobile wireless network operator. (*See* Ex. A, Amended Final Judgment, *United States v. Deutsche Telekom AG*, No. 1:19-cv-02232 (D.D.C.) ("*DOJ Action*"), Dkt. 139, at 2, 7-26.)[2]

The Final Judgment also provided for a court-appointed monitoring trustee with the "power and authority to monitor Defendants' compliance with the terms of [the] Amended Final Judgment" and "such other powers as the Court deems appropriate." (*Id.*, § XII.B.) The Final Judgment further provides:

> The Monitoring Trustee shall be required to investigate and report on the Defendants' compliance with [the] Amended Final Judgment and the Stipulation and Order, and Defendants' progress toward effectuating the purposes of [the] Amended Final Judgment, including but not limited to: [T-Mobile's] sale of the Divestiture Assets, [T-Mobile's] compliance with its requirements to make Cell Sites and Retail Locations available to [DISH], and [DISH's] progress toward using the Divestiture Assets and other company assets to operate a retail mobile wireless network.

[2] The Amended Final Judgment was amended again on July 15, 2026. *DOJ Action*, Dkt. 152. The provisions concerning the Trustee's responsibilities and the Reports filed with DOJ have remained the same, and this opposition cites to the Amended Final Judgment (Ex. A), which was in effect at the time the subpoenas to the Trustee were served.

(*Id.*) The Trustee's confidential analyses, opinions, and conclusions are memorialized in the Reports that are filed with DOJ each month, setting forth T-Mobile and DISH's "efforts to comply with [their] obligations under" the Final Judgment. (*Id.*, § XII.H.) The Trustee's fees and expenses are paid for by T-Mobile, but T-Mobile does not receive copies of the Reports, all of which have been maintained as confidential for the past six years, and none of which has ever been disclosed to anyone other than DOJ. (*See id.*, §§ XII.E, XII.H.)

Theordore W. Ullyot was appointed by the court and served as the Trustee until he submitted his resignation on April 15, 2025. *DOJ Action*, Dkt. 143-2. On April 16, 2025, upon motion of DOJ, the United States District Court for the District of Columbia approved the appointment of Mr. McNally as successor Trustee, effective as of April 18, 2025. *DOJ Action*, Apr. 16, 2025 Minute Order.

## II. The Action

In 2022, the Dale Plaintiffs filed a putative class action complaint against T-Mobile, Deutsche Telekom, and SoftBank, alleging that the 2020 merger of T-Mobile and Sprint resulted in higher prices and reduced competition for retail wireless services, in violation of federal antitrust laws. (*See* Mot. at 5-6.) Specifically, as customers of Verizon and AT&T, they allege that the merger eliminated the incentive for T-Mobile, Verizon, and AT&T to "compete as vigorously for subscribers" leading to "prices that have been inflated and stabilized at supracompetitive levels." (*Id.* at 5-6.)[3] According to this Court, the Action is not focused "on the merger itself, or the prior litigation surrounding it, because this suit really arises from the alleged anticompetitive conduct that took place afterward." Order, *Dale* Dkt. 63, Oct. 7, 2022, at 9.

[3] Just four paragraphs of the 134-paragraph complaint in the Action relate to DISH's failure to pose a competitive threat. *See* Compl., *Dale* Dkt. 1, ¶¶ 90-94.

Mr. McNally understands that the Dale Plaintiffs have requested and already received T-Mobile's and DISH's communications with himself and his office as the Trustee, including copies of the data and information that the two companies provided to the Trustee from the discovery period in the Action. (*See* Mot. at 15.) Seeking even more extensive information, the Dale Plaintiffs also successfully moved to compel DISH to produce materials underlying DISH's submissions to the Trustee. This Court rejected DISH's argument that its production of merely the same documents that were provided to the Trustee would be sufficient, holding:

> Such manicured submissions, alone, are unlikely to present a complete picture of DISH's efforts. As an example, underlying documents used to prepare reports and communication regarding the competitive efforts being put forth by DISH provide a complete picture of the information Plaintiffs seek here. The Court does not believe it is appropriate to force Plaintiffs to rely on the submissions alone and concludes that Plaintiffs need access to DISH's unvarnished views of its post-merger actions[.]

*Dale* Dkt. 338, at 10-11.

## III. The Subpoenas to the Trustee

On February 28, 2025, the Dale Plaintiffs served a subpoena on Mr. Ullyot seeking nine categories of documents, including copies of all of the Reports. On March 14, Mr. Ullyot served responses and objections and did not agree to produce any documents. On July 11, following Mr. Ullyot's resignation and Mr. McNally's appointment as Trustee, the Dale Plaintiffs served a subpoena on Mr. McNally seeking ten categories of documents (the "Subpoena"). (Ex. B.)

The Subpoena largely duplicated the same requests that had been served on Mr. Ullyot, seeking, among other categories, copies of email and other communications between the Trustee and T-Mobile and DISH, documents and data produced by DISH and other third parties to the Trustee, and copies of the Trustee's confidential Reports. The only new request sought communications and documents exchanged between Mr. McNally and Mr. Ullyot after Mr. McNally was appointed as Trustee, in connection with the transition of the position. On August

11, Mr. McNally served responses and objections to the Subpoena. (Ex. C.) Mr. McNally did not agree to produce any documents on various grounds, including that the requests were overly broad, unduly burdensome, not proportional to the needs of the case, sought information protected by applicable privileges, sought documents the Dale Plaintiffs could seek or had already sought or obtained from a party to the Action, and that the burden and expense outweighed any likely benefit of production. (*See id.*)

The Dale Plaintiffs and Mr. McNally then exchanged correspondence in the fall of 2025, and met and conferred on February 19, 2026. During that meet and confer, counsel for the Dale Plaintiffs indicated they were most interested in the Reports, and subsequently offered to limit their requests to production of the Reports. Mr. McNally responded on April 6, and continued to object to producing the Reports. (Ex. D.) However, in an effort to reach a compromise and avoid burdening the Court with this dispute, Mr. McNally offered to produce a declaration (in lieu of document production) concerning the conclusions reached in the Reports, *i.e.*, whether T-Mobile and DISH were in compliance with the obligations that the Trustee monitors under the Final Judgment. (*Id.*) On April 16, the Dale Plaintiffs rejected Mr. McNally's offer. (Ex. E.)

On April 22, the Dale Plaintiffs served an amended subpoena with one request seeking copies of all of the Reports from January 10, 2020 to the Present ("Amended Subpoena"). (Ex. F.) On May 6, Mr. McNally served Responses and Objections to the Amended Subpoena, and continued to assert his objections to producing the Reports. (Ex. G.) The parties met and conferred on May 13, but remained at impasse, and the Dale Plaintiffs indicated they intended to move to compel production. Two months later, the Dale Plaintiffs filed this Motion.[4]

[4] On July 22, 2026, the Dale Plaintiffs filed the Motion in the United States District Court for the Eastern District of Pennsylvania. On August 5, the Dale Plaintiffs filed an Unopposed Motion to Transfer and Stay Movants' Motion to Compel Compliance with Subpoena Pending Transfer; the motion was granted on August 10. On August 19, this Court docketed the Motion, set a briefing schedule, and hearing date.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 45 governs subpoenas to non-parties and provides that parties "must take reasonable steps to avoid imposing undue burden" on the non-party receiving the subpoena, and courts "must quash or modify a subpoena that . . . subjects a [non-party] to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv). "[N]on-parties[] are entitled to greater protection in the discovery process than parties[.]" *Ameritox Ltd. v. Millennium Labs., Inc.*, No. 12-cv-7493, 2012 WL 6568226, at *3 (N.D. Ill. Dec. 14, 2012) (quashing non-party subpoenas where the discovery sought was cumulative, duplicative, and readily available through party discovery). Courts in this District consistently hold that non-party status is a "significant factor" in considering the burden a subpoena imposes. *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02-C-6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005); *see also Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19-cv-7190, 2022 WL 17740419, at *1 (N.D. Ill. Dec. 16, 2022) (Non-parties are afforded this consideration because they have a "different set of expectations than parties. . . . While parties to a lawsuit must accept the invasive nature of discovery, nonparties experience an unwanted burden." (citation modified)). It is within the Court's discretion to enforce the protections of Rule 45 by quashing or limiting overbroad, burdensome, and unreasonable requests to non-parties. *See Craigville Tel.*, 2022 WL 17740419, at *1.

Whether a subpoena subjects a non-party to an undue burden depends on "the value of the information to the requesting party, the respondent's non-party status, the relevance and breadth of the requests, the requesting party's need for the information, the reasonableness of the time period covered by the requests, whether the request is sufficiently particular, and of course whether compliance would in fact be burdensome." *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17-C-8816, 2021 WL 4935162, at *4 (N.D. Ill. Jun. 10, 2021) (quashing subpoena); *see Craigville Tel.*, 2022 WL 17740419, at *1 (same).

Federal Rule of Civil Procedure 26(b)(1) provides that a party is entitled to discovery only of "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" (Fed. R. Civ. P. 26(b)(1)), and these limitations apply "with equal force to nonparty discovery" (*Craigville Tel.*, 2022 WL 17740419, at *2 (citation modified)). The party requesting discovery bears the initial burden of establishing relevance—the threshold requirement for any discovery request. *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 WL 6052366, at *2 (N.D. Ill. Nov. 15, 2019). Even when that threshold is met, Rule 45 requires a court to weigh the requested material's relevance and the requesting party's need against the burden on the non-party. *Craigville Tel.*, 2022 WL 17740419, at *1; *Little v. JB Pritzker for Governor*, No. 18-C-6954, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020) (courts are "particularly sensitive" to the relevancy requirement when "weighing the probative value of the information sought against the burden of production on the non-party." (citation modified)).

Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C), the Court may also limit discovery "if the information sought is cumulative or duplicative of other discovery" or if the information sought "can be obtained from a more convenient or less burdensome source[.]" *Craigville Tel.*, 2022 WL 17740419, at *1.

## <u>ARGUMENT</u>

### I. Production Of The Reports Would Impose An Undue Burden

The Dale Plaintiffs have failed to meet their initial burden of establishing that the Reports are relevant, and the time period they seek is overbroad, such that production of the Reports would impose an undue burden on Mr. McNally. The Dale Plaintiffs offer nothing more than unsupported speculation and conjecture about what might be in the Reports, and in light of the cumulative and duplicative information that they have already received from T-Mobile and DISH, the Motion should be denied.

### A. The Trustee's Analyses And Conclusions In The Reports Are Not Relevant

Mr. McNally understands that both T-Mobile and DISH have already produced to the Dale Plaintiffs copies of their communications with and information they provided to the Trustee from the discovery period in the Action. (*See* Mot. at 15.) In fact, the Dale Plaintiffs have obtained <u>more</u> information from DISH than the Trustee received, because the Court ordered DISH to produce documents underlying its submissions—what the Court referred to as "DISH's unvarnished views." (*See supra*, Section II.) Because of the documents that the Dale Plaintiffs have already obtained, information contained in the Reports that was provided to the Trustee by T-Mobile or DISH is duplicative of information that the Dale Plaintiffs already have, and as a result, should not serve as the basis for compelling Mr. McNally to produce the Reports. *See Craigville Tel.*, 2022 WL 17740419, at *4 (denying motion to compel non-party where party possessed and had already produced some of the communications at issue because the court was "not inclined to subject a nonparty to unduly burdensome discovery for information that is, for the most part, readily available from a party"); *Ameritox*, 2012 WL 6568226, at *3 (quashing subpoenas to non-parties "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation"). The Dale Plaintiffs' argument that the Court has already determined the information in the Reports is a proper subject for discovery (Mot. at 15) misses the point. To prevail on the Motion, the Dale Plaintiffs must show that the Trustee's confidential analyses of that information and the conclusions drawn from it in the Reports, in keeping with his obligations under the Final Judgment, are relevant. They fail to do so.

Throughout the Motion, the Dale Plaintiffs repeatedly assert that the Reports are "highly relevant," to the claims at issue in their case. (*See, e.g.*, Mot. at 1, 2, 4.) They speculate as to what the Reports "likely contain," and that "there is ample reason to believe" that the Reports will demonstrate T-Mobile and DISH's non-compliance with their obligations under the Final

Judgment. (*Id.* at 14.) They plainly seek the Reports in the hope that they "will show that T-Mobile and DISH have not complied with their pre-merger regulatory commitments." (*Id.*) "Unfortunately, 'saying so doesn't make it so.'" *Yost v. Carroll*, No. 20-C-5393, 2022 WL 3594643, at *3 (N.D. Ill. Aug. 23, 2022) (quoting *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010) (granting protective order and denying deposition of third party where subpoena proponent failed to identify the first-hand knowledge it claimed third party witness possessed)). Such conjecture is exactly the kind of fishing expedition that is not countenanced by the Federal Rules. *See Eternity Mart*, 2019 WL 6052366, at *3-4 (denying motion to compel in part because court concluded discovery was a speculative "fishing expedition" as evidenced by statements that discovery sought "could very well," or "[p]erhaps" show).

Indeed, the evidence before this Court indicates that the Dale Plaintiffs' assumptions concerning T-Mobile and DISH's purported non-compliance with their obligations are incorrect. In moving for partial termination of the Amended Final Judgment earlier this year, the United States did <u>not</u> assert that DISH had failed to meet any of its obligations under the Final Judgment. To the contrary, the United States told the court that, since the entry of the Final Judgment, "[DISH] acquired the Boost wireless business from Sprint, launched its service on T-Mobile's network, and built, by June 2023, a new 5G mobile wireless radio network covering 70% of the United States population." (Ex. H, Unopposed Mot. of the United States for Partial Termination of Amended Final Judgment, *DOJ Action*, Dkt. 149, May 19, 2026, at 2.) However, DISH had not "been able to satisfy the FCC that it met <u>separate</u> buildout requirements agreed to with the FCC at the same time as the initial Final Judgment was proposed." (*Id.*) It was because of the FCC's expressed concern that DISH had failed to meet these buildout requirements and the threat of

forfeiture of DISH's spectrum licenses that led DISH to sell most of its spectrum through the transactions with AT&T Inc. and Space Exploration Technologies, Inc. (*Id.* at 2-3.)

The United States also noted that it "does not suggest here that T-Mobile is responsible for the circumstances necessitating this partial termination of the Amended Final Judgment, or that T-Mobile has violated the Amended Final Judgment." (Ex. I, Mem. in Support of Unopposed Mot. of the United States for Partial Terminal of Am. Final Judgment, *DOJ Action*, Dkt. 149, at 2 n.2.) This statement undermines the Dale Plaintiffs' unsupported claims that T-Mobile's sunsetting of its CDMA network in 2022—or any other conduct by T-Mobile—was in violation of the Final Judgment, and somehow "had a hand in DISH's demise." (*See* Mot. at 9, 14.)[5]

Whether the Trustee has concluded that T-Mobile and DISH has complied with their obligations would have been contained in the declaration that Mr. McNally offered to produce. If the Dale Plaintiffs truly wanted to know the Trustee's conclusions, they would have accepted Mr. McNally's offer. Instead, the Dale Plaintiffs refused the offer, continuing to misinterpret the role and responsibilities of the Trustee, and its obligations of confidentiality and candor to the United States.

The Dale Plaintiffs claim that the Reports "describe the events leading up to" DISH's failure to become "the vibrant fourth wireless carrier T-Mobile told regulators would replace the

[5] At the time, T-Mobile maintained that the notice it provided of the CDMA shutdown was consistent with its contractual agreement with DISH and provided sufficient time for DISH to transition its own customers, as it was required to under the parties' agreement. (*See* Ex. J, Monica Alleven, *T-Mobile, Dish go to battle over Boost, CDMA*, FIERCE NETWORK (Mar. 16, 2021), https://www.fierce-network.com/operators/t-mobile-dish-go-to-war-over-boost.) During these types of transitions, according to T-Mobile, carriers often offer various incentives and promotions to get their customers to transition to the new network more quickly. (*Id.*) Instead, DISH chose to enter into an agreement with AT&T. But, according to market analysts, AT&T could not support DISH's CDMA customers (Ex. K, Monica Alleven, *Dish signs $5B MVNO deal with AT&T*, FIERCE NETWORK (July 19, 2021), https://www.fierce-network.com/operators/dish-signs-5b-mvno-deal-at-t), and AT&T may not have even had a CDMA network for Boost customers to utilize (Ex. L, Alex Sherman, *Dish and AT&T's new wireless partnership may foreshadow DirecTV deal*, CNBC (July 19, 2021), https://www.cnbc.com/2021/07/19/dish-and-atts-new-wireless-partnership-potentially-foreshadows-directv-deal.html).

competition the merger eliminated." (Mot. at 2, 3.) During the meet and confer process, counsel for Mr. McNally explained that the Trustee does not generally analyze the competitiveness of the mobile wireless service market, and the Trustee's monitoring obligations arise instead out of the very specific compliance obligations of T-Mobile and DISH, as listed and instructed by the court in the Final Judgment. The Dale Plaintiffs dismiss this objection as "myopic," arguing that the Reports "are relevant because they track conditions that show whether and to what extent DISH ever operated as a competitor to the nationwide mobile network providers." (*Id.* at 15.) But that is simply not what the Final Judgment says, and is simply not what the District Court charged the Trustee with monitoring.

Instead, the Final Judgment sets forth certain detailed and technical and other obligations of T-Mobile and DISH that the Trustee monitors, which do not broadly relate to whether or not "DISH ever operated as a competitor." These responsibilities include monitoring T-Mobile's divestiture of certain assets (which is basically binary in nature, they either did or they did not) and compliance with its requirements to make decommissioned cell sites and retail locations available to DISH (which is also binary), and DISH's progress toward using certain assets to operate a retail mobile wireless network. (*See* Ex. A, § XII.B.) The Trustee does not monitor market conditions of the retail wireless market, or the prices of wireless services in that market.

It is not the case, as the Dale Plaintiffs have argued, that the Trustee and the Dale Plaintiffs are effectively assessing the same identical question. That is, they erroneously claim that the Trustee has been assessing whether or not DISH has "stepped in as a fourth MNO competitor so that competition in the retail wireless market is not substantially lessened[.]" Mem. of Law in Supp. of Plaintiffs' Mtn. to Compel DISH, *Dale* Dkt. 233, at 8-9. As they state, the Dale Plaintiffs are focused on "whether DISH in fact posed, or was capable of posing, a competitive threat to the

three remaining national carriers, or whether, instead, the market became less competitive after the merger." (Mot. at 13.) But in contrast, the Trustee is instead focused on whether T-Mobile and DISH have met the obligations set forth in the Final Judgment, regardless of the impact of meeting those obligations on competition in the market. Answering this question depends on the Trustee's analysis of the information produced to him by T-Mobile and DISH—which he relies on as he has no personal knowledge of the underlying facts—which is the information that the Dale Plaintiffs already have through discovery, and which they and their experts can, and should, analyze.

### B. The Time Period For The Subpoena Is Overbroad

Aside from the fact that the Dale Plaintiffs have not established the relevance of the Reports, the time period they seek—from April 2020 through the present—is overbroad and thus imposes an undue burden. *See, e.g.*, *Signal Fin. Holdings*, 2021 WL 4935162, at *4. The Trustee understands that T-Mobile and DISH have not produced all of their communications with and information submitted to the Trustee through the present. If information can be obtained from a party, there is no reason to seek it from a non-party. *See Tresóna Multimedia, LLC v. Legg*, No. 15-C-4834, 2015 WL 4911093, at *3 (N.D. Ill. Aug. 17, 2015) (quashing non-party subpoena and emphasizing the least intrusive means of obtaining discovery). And if T-Mobile and DISH have no obligation to produce their communications with the Trustee through the present, the Trustee should not be required to produce the Reports through that date.

## II. Production Of The Reports Is Not Proportional To The Needs Of The Case

Even if this Court finds the Reports have some attenuated relevance, compelling the Trustee to produce them would not be proportional to the needs of the case, given the confidentiality concerns implicated by the Trustee's unique position as the independent, court-appointed monitor charged with overseeing compliance with the Final Judgment.

In keeping with the Final Judgment, the Reports, which assess confidential information—including information and data received from T-Mobile and DISH—are sent only to DOJ, to be used as part of the Antitrust Division's ongoing investigation and enforcement activity. Pursuant to the Final Judgment, the Reports are not filed publicly on the docket because they contain confidential information. (*See* Ex. A, § XII.H.) They are not shared with T-Mobile, DISH, or any other party. When the Reports were prepared by the Trustee, it was not anticipated that they would be subject to civil discovery, let alone sought by the plaintiffs in a class action filed against T-Mobile, the party paying for the Trustee's monitoring work. (*See id.*, § XII.E.)[6] Compelling production of the Reports in this case could thus have broader, chilling effects on monitoring trustees and their communications with DOJ in this and other cases.

The highly confidential nature of the Reports is also apparent because if Plaintiffs sought the Reports through FOIA, they would facially fall within the exemption from disclosure under the ongoing enforcement activity exception. *See* 5 U.S.C. § 552(b)(7)(A); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037-39 (7th Cir. 1998) (Exemption 7(A) applies where disclosure of investigatory records could reasonably be expected to interfere with ongoing enforcement proceedings, even if the requester seeks the documents for private antitrust litigation). To be clear, contrary to the Dale Plaintiffs' claim in the Motion, Mr. McNally does not object to the Amended Subpoena based on FOIA and does not dispute that the standards for disclosure under FOIA and in civil discovery are distinct. However, the fact that the Reports appear FOIA-exempt illustrates the confidentiality concerns at issue here. The Reports are prepared for and sent only to DOJ as part of their ongoing enforcement activity and they should not be disclosed to a subject of that

[6] In the event that the Court grants the Motion, the Reports should be produced only to T-Mobile's outside counsel, and not to any T-Mobile in-house counsel or other T-Mobile employees.

investigation. The Dale Plaintiffs should not be able to use discovery in the Action to circumvent well-established FOIA and other confidentiality restrictions on these materials.

## III. The Dale Plaintiffs Cannot Use The Trustee As Their Unretained Expert

Federal Rule of Civil Procedure 45 separately protects a non-party from being conscripted as an unpaid expert, as the Dale Plaintiffs attempt to do here. A court may quash or modify a subpoena that requires disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). In *Yost v. Carroll*, the court prohibited discovery that would effectively force an unretained professional to act as an expert, holding that each side must retain its own expert and that the proponent had not shown a substantial need that could not otherwise be met or assured reasonable compensation. 2022 WL 3594643, at *2-3, *5.

This is exactly what the Dale Plaintiffs seek to do here. If the Dale Plaintiffs' objective was to obtain the Trustee's opinion as to whether or not T-Mobile and DISH have been in compliance with the Final Judgment, they could have accepted the declaration that Mr. McNally offered. The offer was rejected, however, likely because the Reports are a shortcut to analyzing the mass of data and information the Dale Plaintiffs have already received. The Dale Plaintiffs have not hired Mr. McNally as their expert and should not obtain the benefit of confidential work conducted by the Trustee, that was paid for by T-Mobile, especially when they have been unable to articulate the relevance of the Trustee's conclusions. The Dale Plaintiffs should retain their own expert to analyze the documents they received in discovery in the Action, and Mr. McNally should not be compelled to produce the Reports.

## CONCLUSION

For all the reasons set forth above, the Court should deny the Motion to Compel.

September 9, 2026

Respectfully submitted,

By: */s/ Sarah Gibbs Leivick*
Sarah Gibbs Leivick (admitted *pro hac vice*)
**KASOWITZ LLP**
1633 Broadway
New York, NY 10019
sleivick@kasowitz.com
Tel.: (212) 506-1765

-and-

Robert M. Andalman
**ARONBERG GOLDGEHN**
225 W. Washington Street
Suite 2800
Chicago, Illinois 60606
randalman@aandglaw.com
Tel: (312) 828-9600

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this opposition to the Dale Plaintiffs' July 22, 2026 Motion to Compel Compliance with Subpoena was filed through the Court's CM/ECF system and thereby served upon the Dale Plaintiffs' counsel on September 9, 2026.

/s/ *Sarah Gibbs Leivick*
Sarah Gibbs Leivick