**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTHONY DALE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>EDWARD E. MCNALLY,<br><br>*Defendant.* | Case No. 1:26-cv-09778<br><br>Hon. Thomas M. Durkin<br><br>Magistrate Albert Berry III |

# STATEMENT OF INTEREST OF THE UNITED STATES IN SUPPORT OF NON-PARTY EDWARD E. MCNALLY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL


ANDREW S. BOUTROS
United States Attorney for the
Northern District of Illinois

STANLEY E. WOODWARD, JR.
Associate Attorney General

EMILY CLAIRE MIMNAUGH
Deputy Associate Attorney General

G. CHARLES BELLER
STEPHANIE GRECO
Deputy Assistant Attorneys General

JARED T. BOND
Acting Deputy Director of Civil
Enforcement

JARED A. HUGHES
FREDERICK S. YOUNG
Attorneys
Antitrust Division
U.S. Department of Justice

The United States respectfully submits this Statement of Interest ("Statement") under the authority of 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice to attend to the interests of the United States in any case pending in a federal or state court. Here, the United States has an interest in protecting confidential monthly reports ("Confidential Reports") that are prepared by the Monitoring Trustee ("Trustee") for the Antitrust Division ( "Division"). The Confidential Reports are produced for the Division to help it secure ongoing compliance with the consent decree that resolved the United States' lawsuit challenging the T-Mobile/Sprint merger ("Consent Decree").[1] These Confidential Reports are now the subject of the Dale Plaintiffs' Motion to Compel (Dkt. 1, "Motion"). Compelling production of the Confidential Reports is likely to harm the Division's work with the Trustee to police compliance with the Consent Decree[2] and to harm the Division's ability to enforce consent decrees in the future.

**<u>DISCUSSION</u>**

Under F.R.C.P. Rule 45(d)(3)(A)(iv), a court "must quash or modify a subpoena" to a non-party that "subjects a person to an undue burden." Courts have "consistently held" that

---

[1] The District Court for the District of Columbia entered the Final Judgment for which the Trustee was appointed in April 2020. *See United States v. Deutsche Telekom A.G.*, No. 1:19-cv-22332 (D.D.C.) ("DOJ Action") (Dkt. 85) (attached here as Exhibit A). The Court entered an Amended Final Judgment in October 2023 and a Second Amended Final Judgment in July 2026. *See id.* Dkts. 139, 152. The provisions relating to the Trustee remained unchanged through these amendments. This Statement refers generically to the "Final Judgment" when discussing provisions that have remained unchanged in the amended versions.

[2] The Consent Decree and Confidential Reports are relevant to the Division's ability to ensure compliance by defendants T-Mobile and DISH. While the merger involved T-Mobile and Sprint, DISH agreed to be added as a defendant and be bound by the Final Judgment. *See* Final Judgment at 2. On December 31, 2023, EchoStar Corp. acquired DISH Network Corp., the entity named in the Final Judgment. *See* EchoStar Corp. 2023 Annual Report/10-K, *available at* https://ir.echostar.com/static-files/5d00519f-e471-4572-8cea-add688bc551e. The Motion refers to DISH, so this Statement will do so as well; the Motion for Partial Termination discussed in this Statement refers instead to EchoStar.

"'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue," such that "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188-89 (N.D. Ill. 2013) (quashing non-party subpoenas) (citations omitted). In determining whether a subpoena recipient "is being subjected to undue burden," courts consider a "number of factors, including the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Parker*, 291 F.R.D. at 188 (citation omitted).

"Burden" means more than "mere administrative hardship" and "encompasses the interests that enforced production would compromise or injure." *Patterson v. Burge*, 2005 WL 43240, at *1, *5 (N.D. Ill. Jan. 6, 2005) (quashing non-party subpoena where relevance was based on speculation as to what the evidence would contain and where forcing production by the non-party journalist would impose a "significant burden on important private and public interests" (citing *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004))); *see Nw. Mem'l*, 362 F.3d at 928-29 (quashing non-party subpoena to hospital for medical records relating to a party medical doctor's patients where relevance rested on speculation as to what the records would contain and the disclosure of sensitive medical records would impose undue burdens on the hospital and its patients). Here, the Motion threatens the non-party United States' interests, which include "depriving" the United States of "a useful enforcement tool" as well as the "long-term effect of permitting this type of discovery." *In re LTV Securities Litigation*, 89 F.R.D. 595, 619 (N.D. Tex. 1981).

The Motion should be denied because ordering production of the Confidential Reports

would impose burdens on the Trustee and the United States as non-parties that substantially outweigh any relevance the reports may have to the Dale Action.[3]

## I. Production of the Confidential Reports would harm the United States' law enforcement interests in this Consent Decree and in other cases.

### A. Monitoring trustees can play a critical role in Antitrust Division decrees.

In appropriate cases, monitoring trustees assist the Division and courts in efficiently ensuring compliance with a final judgment.[4] Monitoring trustees provide a capacity for active decree monitoring and consultation with the Division beyond what the Division would be capable of providing for all of its active consent decrees.[5] Moreover, trustees' work is paid for by the defendants responsible for the conduct that led to the consent decree, thus serving the public interest by freeing up financial resources and personnel to be devoted to the Division's mission of investigating, identifying, and redressing anticompetitive conduct.[6]

---

[3] *Dale v. Deutsche Telekom AG*, No. 22-3189 (N.D. Ill.) ("Dale Action").

[4] *See, e.g.*, Final Judgment, *United States v. Microsoft Corp.*, No. 1:98-cv-01232-CKK (Docket No. 746) (D.D.C. Nov. 12, 2002) (appointing a three-person technical committee to monitor compliance); Final Judgment, *United States v. Ticketmaster Ent.*, 2020 WL 1061445, at *13-15 (Jan. 28, 2020) (appointing monitoring trustee to monitor compliance with the Final Judgment); Final Judgment, *United States v. Bayer AG*, No. 18-1241 (D.D.C. Feb. 8, 2019) (same).

[5] *See* U.S. Dep't of Just., Merger Remedies Manual (Sept. 2020) at 30, *available at* https://www.justice.gov/atr/page/file/1312416/dl ("A monitoring trustee may be required when technical expertise unavailable within the Division is critical to an effective divestiture [or] . . . when there is an unusually high burden associated with monitoring compliance with a decree . . . . In all cases, the trustee's absolute obligation will be to the Division, while the parties will be responsible for compensating the trustee.").

[6] *See* U.S. Dep't of Just., Antitrust Division Policy Guide to Merger Remedies (June 2011) at 26, *available at* https://www.justice.gov/atr/page/file/1098656/dl?inline ("A monitoring trustee with industry experience can reduce the burden on the Division and the parties while ensuring that the parties adhere to the decree."); *see also* FTC Bureau of Competition, Negotiating Merger Remedies (Jan. 2012) at 18, *available at* https://appliedantitrust.com/09_merger_guidelines/remedies_ftc/ftc_negotiating_merger_remedies1_2012.pdf ("The order to hold separate or maintain assets will include the appointment of an independent third party to . . . monitor the parties' compliance with the order" who "will be the 'eyes and ears' of the Commission and its staff, raising issues with the staff as they arise.").

Monitoring trustees—along with their "confidential reports"—have long been recognized as playing an important role in merger remedies. The Federal Trade Commission found in 2017 that "[t]he appointment of independent third parties to monitor compliance . . . appeared to have helped limit risks," and it went on to note that the "monitors' *confidential* reports contain information on how the respondents have complied with their obligations under the order."[7] The FTC also concluded that open communication between a monitoring trustee and agency personnel is essential to ensuring a remedy's success.[8]

**B. Courts have protected trustee materials from discovery because they recognized the harm to United States law enforcement interests that would result.**

Courts have refused to require production of a monitoring trustee's materials because of the impact the discovery would have on the government's law enforcement interests. In *LTV Securities*, private plaintiffs sought documents prepared by or for a Special Officer appointed pursuant to an SEC consent decree. The court refused the discovery, holding that the Special Officer's reports and recommendations to the SEC need not be produced absent a showing of "compelling need" for particular items.[9] Noting that the plaintiffs had access to the original sources of information, the court determined that the time and expense for the plaintiffs to review

---

[7] *FTC's Merger Remedies 2006-2012* (Jan. 2017) at 10-12 ("2017 Merger Remedies Study") (emphasis added), *available at* https://www.ftc.gov/system/files/documents/reports/ftcs-merger-remedies-2006-2012-report-bureaus-competition-economics/p143100_ftc_merger_remedies_2006-2012.pdf.
[8] *Id.* at 37 (highlighting "communication" as a "best practice" and noting the importance of "bring[ing] issues or concerns to the attention of the staff or the monitor as soon as they arise" and of "stay[ing] in contact with the staff and the monitor").
[9] *In re LTV Securities Litigation*, 89 F.R.D. 595, 621-22 (N.D. Tex. 1981). Although the Special Officer was formally appointed by the defendant's Audit Committee, the defendant was required to do so by an SEC consent decree, the Special Officer was obliged to "cooperate fully" with and furnish reports and recommendations to the SEC, and the SEC had a right to confer with him. The court determined that his role justified what it termed a "hybrid privilege" to protect from premature exposure the government's theories regarding past conduct and future avenues of investigation. *Id.* at 616-18.

those materials did not justify requiring the Special Officer to produce his work product.[10]

Relying on *LTV Securities*, a district court overruled class plaintiffs' objections to a provision in an Antitrust Division consent decree, which prohibited civil discovery of tape recordings to be made pursuant to the decree for use by the defendants and the Division to police compliance with the decree.[11] While recognizing that parties generally may not use a consent decree to seal *existing* evidence that would otherwise be available, the district court (in reasoning accepted by the Second Circuit) upheld the "prospective protective order clause" in the decree by distinguishing materials already in existence from the tapes at issue, since the tapes would not exist absent the decree.[12] The district court noted that without that provision "the Antitrust Division would be deprived of a very powerful enforcement tool in this and future cases" and "would lose the ability to leverage the private resources of the Defendants to serve the public's interest in effective enforcement of the antitrust laws."[13]

### C. Production of the Confidential Reports would undermine the United States' ongoing enforcement here and in other current and future matters.

Granting the Motion here would undermine the benefits to antitrust enforcement from the use of a monitoring trustee not only in this case but in other current and future cases in which trustees are being or may appropriately be used. The Trustee team here includes engineering, financial, and other experts who obtain information from defendants T-Mobile and DISH

---

[10] *Id.* at 616.
[11] *See United States v. Alex. Brown & Sons, Inc.*, 963 F. Supp. 235, 242-46 (S.D.N.Y. 1997), *affirmed sub nom. United States v. Bleznak*, 153 F.3d 16 (2d Cir. 1998).
[12] *See Alex. Brown*, 963 F.2d at 245-46; *Bleznak*, 153 F.3d at 19-20.
[13] *See Alex. Brown*, 963 F.2d at 243-44. In affirming the entry of the decree as written, the Second Circuit expressly did not "address the merits of a claim of 'investigatory' or other privilege." *See Bleznak*, 153 F.3d at 20. Similarly, the Court need not hold here that monitor discovery should be protected in all cases, and it need only address the circumstances presented here.

relating to their decree compliance and then synthesize the information for, and report their observations and assessments to, the United States. The Trustee's team includes experts in areas outside the Antitrust Division's ordinary subject-matter expertise, providing the Division with important insight into, for example, technical network design information submitted by the defendants. In turn, the Division often shares with the Trustee team information gained through its own enforcement efforts, to inform further investigatory steps for the Trustee team, the Division, or both. These discussions are often reflected in the Confidential Reports, both explicitly, in summarizing recent developments, and implicitly, in that each report includes work product that was prepared based on joint discussions between the Trustee and the Division.

The Confidential Reports thus represent a critical component of the United States' ongoing law enforcement interests in ensuring that T-Mobile and DISH comply with the Final Judgment. Disclosure of the Confidential Reports here would harm those interests by revealing to T-Mobile the confidential work product developed by the Trustee and the Antitrust Division and reflected in the Confidential Reports. Disclosure also could expose those who have assisted the Trustee and the Division to negative consequences and chill the Trustee's and the Division's ability to obtain additional information important to securing compliance.

Further, requiring production of the Confidential Reports likely would have an immediate impact on the other Division cases in which trustees have been or may be appointed. As shown in the attached Appendix, since January 2025 the Division has agreed to five other consent decrees requiring the appointment of a trustee and five more for which one may be appointed.[14]

[14] These numbers are for the Antitrust Division alone and would be higher if the FTC's cases were included. In its 2017 Merger Remedies Study, the FTC noted that for mergers in the 2006-2012 period, "74% of the [merger remedy] orders allowed the Commission to appoint a monitor, but the Commission did not appoint one in cases where it ultimately determined a monitor was unnecessary." 2017 Merger

Looking back ten years (the standard length for Division consent decrees), the Appendix lists 15 *more* cases since 2016 in which a trustee was to be appointed and one more for which one may be appointed. The Division and trustees in active cases would have to take immediate account of the risk that trustee reports in those cases could be subject to production in private litigation, which likely would lead to an immediate chilling effect on the communication the FTC has found is a best practice for minimizing risks to implementation of a decree.[15]

Compelling production of the Confidential Reports also would make it less likely that future defendants would agree to the use of a trustee. In appropriate cases the Antitrust Division seeks defendants' agreement to a trustee and to pay the trustee's fees and expenses. Defendants will be less likely to agree to those terms if they know the trustee's work and reports—which they would be paying for—could be used against them elsewhere. Compelling production here can be expected to lead to the use of fewer trustees (thus forcing the government to incur monitoring expenses that would otherwise be borne by the defendants) and to fewer consent decrees (thus preventing the government from winning relief without the risk and expense of a trial). This likely harm to the Trustee's and the United States' interests is properly counted among the burdens this discovery would impose on non-parties and weighs against the Motion.[16]

## II. Plaintiffs have not established the relevance of or need for the Confidential Reports.

The Plaintiffs' argument that the Confidential Reports are relevant rests on two false premises. First, contrary to Plaintiffs' assertions, DISH did not fail to comply with the Final

---

Remedies Study at 13-14 (noting the "option to appoint a monitor was included in 97% of orders that involved non-structural remedies").

[15] *See supra* Sec. I.A.

[16] *See In re LTV Securities Litigation*, 89 F.R.D. at 621-22.

Judgment's obligations to enter as a new mobile wireless services provider and to build a new nationwide mobile wireless radio network with its unused spectrum.[17] In fact, DISH *satisfied* each of its commitments.[18] Second, the Confidential Reports would not reveal the Trustee's analysis of the merger's impact on competition. The Final Judgment authorizes him *only* to assess whether T-Mobile and DISH satisfied their specific obligations under the decree. As the Trustee's opposition brief explains, the Trustee's responsibilities are limited to monitoring compliance with the decree, and not to monitoring competition in the mobile wireless industry.[19] Accordingly, Plaintiffs have provided no reasonable explanation as to how the Confidential Reports might contain relevant information.

Finally, the Plaintiffs do not need the Confidential Reports because they are otherwise receiving vast discovery from the parties and numerous non-parties. The recent Joint Status Report summarizes the discovery the Dale Plaintiffs have received or are about to receive from T-Mobile, DISH, and more than a score of non-parties.[20] Yet even with all the discovery

---

[17] *See* Motion at 2 and 8 (claiming that DISH "exited the market for national retail mobile wireless services" and that "DISH's network buildout never materialized").

[18] *See generally* Memorandum in Support of Unopposed Motion of the United States for Partial Termination of Amended Final Judgment at 3-17 (DOJ Action Dkt. 149) (May 19, 2026) (attached as Exhibit B) (noting that DISH "built a new 5G wireless radio network covering 70% of the United States population, as required" by the Final Judgment, that by June 2023 "DISH satisfied each of" the buildout commitments in the consent decree, that DISH subsequently sold its spectrum licenses due to its failure to satisfy the FCC that it met the *separate* FCC buildout obligations DISH agreed to when it purchased the licenses, and that DISH continues as a mobile wireless services provider).

[19] *See* "Non-Party Edward E. McNally's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel" (Dkt. 10) at 3. *See also United States v. Apple, Inc.*, 2014 U.S. App. LEXIS 8108 at *20-21 (2d. Cir. 2014) (determining that the role of another Antitrust Division monitoring trustee was limited to the responsibilities defined in the court's decree and "would not allow the monitor to investigate whether such personnel were in fact complying with the antitrust or other laws"); *EEOC v. Roadway Express, Inc.*, No. 06-cv-4805, 2010 U.S. Dist. LEXIS 143054 (N.D. Ill. Dec. 20, 2010) (entering consent decree providing that the defendant could seek the Court's assistance if necessary to void payment of any fees or expenses incurred by the Monitor that relate to *work beyond the scope of the Monitor's duties under the consent decree*) (emphasis added)).

[20] *See* Dale Action, Dkt. 389 (Sept. 9, 2026) (noting Plaintiffs received 5.6 million documents from T-

received to date, Plaintiffs have not demonstrated they need the Confidential Reports because they have not identified any specific relevant information they wish to receive from the Trustee that is not available from T-Mobile, DISH, or one of the numerous other non-parties also subpoenaed.

**CONCLUSION**

For all of these reasons, the Court should deny the Motion to Compel.

Dated: September 30, 2026

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

ANDREW S. BOUTROS
United States Attorney

STANLEY E. WOODWARD, JR.
Associate Attorney General

EMILY CLAIRE MIMNAUGH
Deputy Associate Attorney General

G. CHARLES BELLER
STEPHANIE GRECO
Deputy Assistant Attorneys General

JARED T. BOND
Acting Deputy Director of Civil Enforcement

JARED A. HUGHES, Acting Chief
Media, Entertainment & Communications Section

/s/

Frederick S. Young, Trial Attorney
(D.C Bar No. 421285)
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7000
Washington, D.C. 20530
(202) 725-2503
Frederick.Young@usdoj.gov

Mobile in April 2025, are receiving productions from Verizon, AT&T, and DISH, have subpoenaed at least 21 additional non-parties, and are due to take at least 15 depositions of T-Mobile alone).

**APPENDIX**

**U.S. Department of Justice Antitrust Cases where Consent Decree included Monitor**[1]

**2016-Present**

| Case | Dkt. | Date | Document |
|---|---|---|---|
| *United States v. Agri Stats*, Case No. 0:23-CV-03009-JRT-JFD (D.Minn) | 763 | 9/10/26 | Final Judgment at 20-26. |
| *United States v. RealPage*, Case No. 1:24-cv-710 (M.D.N.C.) | 194 | 5/19/26 | Final Judgment at 18-24.* |
| *United States v. Deutsche Telekom AG*, Case No. 1:19-cv-2232-TJK (D.D.C.) | 152 | 7/15/26 | Second Amended Final Judgment at 26-28. |
| *United States v. Live Nation Entertainment, Inc.*, Case No. 1:24-cv-39730-AS (S.D.N.Y.) | 1523-2 | 6/12/26 | Proposed Final Judgment at 26-31. |
| *United States v. Reddy Ice LLC*, Case No. 1:26-cv-271 (D.D.C.) | 24-1 | 5/29/26 | Final Judgment at 58-62. |
| *United States v. UnitedHealth Group*, Case No. 1:24-cv-03267-JKB (D. Md.) | 252 | 2//03/26 | Modified Final Judgment at 23-28. |
| *United States v. Safran, S.A.*, Case No. 1:25-cv-01897 (D.D.C.) | 14 | 11/25/25 | Final Judgment at 14-17. |
| *United States v. Cargill Meat Solutions Corp.*, Case No. 1:22-cv-1821 (D. Md.) | 85 | 4/9/24 | Modified Final Judgment at 12-17. |
| *United States v. Assa Abloy Ab*, Case No. 1:22-cv-02791 (D.D.C.) | 143 | 9/13/23 | Final Judgment at 27-29. |
| *United States v. Danfoss A/S*, Case No. 1:21-cv-1880 (D.D.C) | 13 | 10/26/21 | Final Judgment at 24-27. |
| *United States v. Intuit Inc.*, Case No. 1:20-cv-03441-ABJ (D.D.C.) | 16 | 8/02/21 | Final Judgment at 23-26. |
| *United States v. Liberty Latin America Ltd.*, Case No. 1:20-cv-03064-TNM (D.D.C.) | 16 | 2/03/21 | Final Judgment at 26-28. |
| *United States v. Centurylink, Inc.*, Case No. 1:17-cv-02028 (D.D.C.) | 15 | 8/17/20 | Amended Final Judgment at 28-30. |
| *United States v. United Technologies Corp.*, Case No. 1:20-cv-00824-DLF (D.D.C.) | 28 | 7/22/20 | Final Judgment at 42-45. |

[1] A monitor was to be appointed in all cases cited except those marked with an asterisk. In *RealPage*, the court entered, or the parties have proposed, six separate final judgments contemplating appointment of a monitor; a monitor was designated to be appointed for defendant RealPage itself, but for the five other defendants a monitor would be appointed only if certain conditions came true. In *Cox Enterprises* a monitor would be appointed only if certain conditions came true.

| Case | Dkt. | Date | Document |
|---|---|---|---|
| *United States v. Ticketmaster Ent.*, Case No. 1:10-cv-00139-RMC (D.D.C.) | 29 | 1/28/20 | Amended Final Judgment at 30-33. |
| *United States v. CVS Health*, Case No. 18-2340-RJL (D.D.C.) | 137 | 9/04/19 | Final Judgment at 16-18. |
| *United States v. Bayer AG*, Case No. 1:18-cv-01241-JEB | 25 | 2/08/19 | Final Judgment at 33-36. |
| *United States v. Thales S.A.*, Case No. 1:19-cv-00569-BAH (D.D.C.) | 13 | 7/01/19 | Final Judgment at 21-24. |
| *United States v. Dow Chemical*, Case No. 1:17-cv-01176-APM (D.D.C.) | 16 | 10/19/17 | Final Judgment at 23-25. |
| *United States v. Anheuser-Busch InBev SA/NV*, Case No. 1:16-cv-01483 (D.D.C.) | 42 | 10/22/18 | Modified Final Judgment at 24-27. |
| *United States v. Danone S.A.*, Case No. 1:17-cv-00592-KBJ (D.D.C.) | 11-1 | 7/12/17 | Final Judgment at 17-20. |
| *United States v. Springleaf Holdings, Inc.*, Case No. 1:15-cv-0992-RMC (D.D.C.) | 20 | 4/15/16 | Final Judgment at 14-17. |
| *United States v. Cox Enterprises, Inc.*, Case No. 1:15-cv-01583-TFH (D.D.C.) | 11 | 1/21/16 | Final Judgment at 23-26* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2026, I caused a copy of the foregoing Statement of Interest of the United States in Support of Non-Party Edward E. McNally's Opposition to Plaintiffs' Motion to Compel to be served upon all counsel of record via the Court's CM/ECF system.

/s/

Frederick S. Young
U.S. Department of
Justice Antitrust Division
450 Fifth Street NW, Suite 7000
Washington, D.C. 20530
(202) 725-2503
Frederick.Young@usdoj.gov