**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTHONY DALE, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY, on behalf of themselves and all others similarly situated,<br><br>Movants,<br><br>v.<br><br>EDWARD E. MCNALLY,<br><br>Respondent. | Case No. 1:26-cv-09778<br><br>Hon. Thomas M. Durkin<br><br>Hon. Albert Berry III |

**<u>MOVANTS' REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO NONPARTY EDWARD E. MCNALLY</u>**

Mr. McNally's Opposition to the Motion turns his public role upside down. The court overseeing the Consent Decree appointed him and his predecessor, Theodore Ullyot, to help discharge a public function: ensuring that the success of DISH Network ("DISH") as a proposed fourth competitor would preserve the competitive balance that existed before the merger of T-Mobile and Sprint.[1] Presumably Mr. McNally and Mr. Ullyot, very senior and prominent attorneys, have been well compensated by T-Mobile for this work supposedly on behalf of the American people.[2] But now that DISH has unquestionably failed to fulfill that role, Mr. McNally seeks to withhold their work from a proposed class of consumers the Consent Decree was meant to protect.

Given the lack of any legal foundation for his attempt, Mr. McNally, unsurprisingly, does not respond to most of the Motion. He does not dispute that the reports are relevant to T-Mobile's asserted affirmative defense based on the DOJ's approval of the merger in *United States v. Deutsche Telekom AG*, No. 1:19-cv-02232 (D.D.C.), Mot. at 14; does not respond to Movants' showing that his reports address the very same topics the United States used to assess competition in the national retail wireless services market, *id.* at 15–16; and does not address Movants' authority that confidentiality concerns do not justify withholding discoverable material—particularly where, as here, a robust confidentiality order is in place, *id.* at 17–18.[3] Indeed, Mr. McNally *does not address the Confidentiality Order at all.*

[1] *See* Mot. Ex. B, Final J. ("Consent Decree"), *United States v. Deutsche Telekom AG*, No. 1:19-cv-02232 (D.D.C. Apr. 1, 2020), ECF No. 85.

[2] As Mr. McNally repeatedly notes, the Trustee's "fees and expenses are paid for by T-Mobile." Opp. at 4; *see also id.* at 1, 15; Mot. Ex. B § XII.E, ECF No. 1-5 (providing that the Monitoring Trustee "shall serve at the cost and expense of Divesting Defendants").

[3] Amended Agreed Confidentiality Order ("Confidentiality Order"), *Dale v. T-Mobile US, Inc.* ("*T-Mobile*"), No. 22-cv-03189 (N.D. Ill. July 25, 2025), ECF No. 336.

Where Mr. McNally does respond, his arguments fail.[4] The monthly reports are not "duplicative" of the parties' submissions to the Monitoring Trustee, as Mr. McNally argues, Opp. at 9, because the Monitoring Trustee's contemporaneous findings as to T-Mobile's and DISH's compliance with the Consent Decree's obligations appear nowhere else. His confidentiality objection, *see id.* at 14, rests on a provision of the Consent Decree that governs public filing, not discoverability. And Mr. McNally waived his objection that Movants seek "unretained expert" material under Rule 45(d)(3)(B)(ii), *id.* at 15, when he omitted it from the objections he served; in any event, this Rule does not apply to existing reports created by a witness to the events in the underlying case.

Finally, since Movants filed the Motion on July 22, 2026, DISH has agreed to produce the submissions it made to the Monitoring Trustee after June 2024, undercutting Mr. McNally's objection to producing reports he created after that time. *See id.* at 13.

## I. THE MONTHLY REPORTS ARE RELEVANT AND ARE NOT DUPLICATIVE

"The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *Dale v. T-Mobile US, Inc.*, No. 22-cv-03189, 2025 WL 4059469, at *2 (N.D. Ill. Oct. 3, 2025) (cleaned up). That is, a party may use a subpoena to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

Movants have established that the reports are relevant to a core issue in the underlying action: whether DISH could become a robust competitor in the national retail mobile wireless

[4] Mr. McNally also asserts that Movants have "failed to 'take reasonable steps to avoid imposing undue burden'" under Rule 45(d)(1). Opp. at 2. Not so. The Original Subpoena contained ten document requests. Mot. at 10; Mot. Ex. E, ECF No. 1-8. On April 22, 2026, Movants served an Amended Subpoena narrowing their requests to a single category of documents—the monthly reports alone. Mot. at 10; Mot. Ex. F, ECF No. 1-9.

services market and replace the competition the merger eliminated. Indeed, as this Court noted previously, "[o]ne of the principal arguments in this case is that the merger negatively affected competition because DISH has been unable to fill (and will be unable to fill) the role in the market that was vacated when T-Mobile and Sprint merged." *Id.* at *6. Accordingly, documents concerning "DISH's post-merger actions" are "central to the claims being made in this suit." *Id.* at *4. Mr. McNally does not dispute that these issues are central to the underlying action. His remaining arguments fail for three reasons.

***First***, Mr. McNally ignores the fact, Mot. at 14, that the monthly reports bear directly on T-Mobile's asserted defense that the United States' approval of the merger absolves it of liability in the underlying action, *see T-Mobile*, ECF No. 146 at 38. This omission alone concedes the monthly reports' relevance. *See LM Ins. Corp. v. ACEO, Inc.*, No. 08 C 2372, 2010 WL 893097, at *2 (N.D. Ill. Mar. 11, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession." (citation omitted)).

***Second***, Mr. McNally quotes the United States' May 19, 2026 filings seeking to relieve DISH of certain obligations under the Consent Decree. Opp. at 10–11. But he ignores what they show: that the United States relied on the very same metrics the Monitoring Trustee addresses in his reports to reach its conclusion that DISH failed as a competitor. *See* Mot. at 16 (quoting Mot. Ex. C at 3, 14, ECF No. 1-6). Mr. McNally offers no response.

***Third***, Mr. McNally casts the monthly reports as mere digests of information T-Mobile and DISH produced to him—information that Movants "already have through discovery." Opp. at 13. He is mistaken. The reports are not only information T-Mobile and DISH gave him. They are what he made of it: his findings as to whether those companies were meeting their obligations under the Consent Decree. His findings are themselves contemporaneous facts, because Section XII.B asks

not merely what DISH did but whether DISH was making "progress toward" the Consent Decree's purposes. *See* Mot. Ex. B § XII.B, ECF No. 1-5. Indeed, when this Court ordered DISH to produce the documents underlying its submissions to the Monitoring Trustee—a ruling Mr. McNally himself quotes, Opp. at 5—the Court rejected the premise that DISH's own descriptions of its compliance capture the full record: "Such manicured submissions, alone, are unlikely to present a complete picture of DISH's efforts." *Dale*, 2025 WL 4059469, at *5.[5] The same is true here.

## II. PARTIES AND NONPARTIES ROUTINELY PRODUCE CONFIDENTIAL MATERIAL IN FEDERAL COURT

Mr. McNally largely concedes his confidentiality objections. He cannot and does not object on FOIA grounds. Opp. at 14. He identifies no confidentiality interest of his own in the reports. Nor does the record reflect any objection from T-Mobile or DISH. And, critically, he does not identify a single deficiency in the Confidentiality Order—under which T-Mobile, DISH, and numerous other nonparties have produced millions of sensitive business documents. *See* Mot. at 17–18; *see, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 CV 0864, 2018 WL 6413199, at *2 (N.D. Ill. Dec. 6, 2018) (finding that confidentiality order adequately addressed nonparty's privacy concerns). He therefore implicitly concedes the point that it would adequately protect any confidentiality interests he could assert. *See LM*, 2010 WL 893097, at *2.

Instead, Mr. McNally relies on the Consent Decree's instruction that the "reports will not be filed in the public docket of the Court" if they "contain information that the Monitoring Trustee deems confidential." *See* Mot. Ex. B § XII.H, ECF No. 1-5. But that provision governs public

[5] Unlike in *Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19 CV 7190, 2022 WL 17740419, at *2–4 (N.D. Ill. Dec. 16, 2022), and *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 12-cv-7493, 2012 WL 6568226, at *3 (N.D. Ill. Dec. 14, 2012), Opp. at 9, Movants cannot obtain the reports from "T-Mobile or any other entity," Opp. at 1. Nor do Movants seek "vast swaths of information" from a nonparty after it already produced accessible materials. *Contrast Craigville*, 2022 WL 17740419, at *2–4.

filing. It does not create a privilege or restrict discovery; the Monitoring Trustee may deem a report confidential, but he cannot deem it non-discoverable.

Mr. McNally further claims that producing the reports "would violate" a purported "fundamental expectation of confidentiality" under which the monitorship has operated. Opp. at 2. He suggests, without authority, that violating this expectation "could thus have broader, chilling effects on monitoring trustees and their communications with DOJ in this and other cases." *Id.* at 14. He never explains how a chilling effect could follow from production under a confidentiality order. Crediting his speculation would allow him to invoke a privilege federal law does not afford him and undermine the "strong public policy in favor of disclosure of relevant materials." *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3586183, at *3 (N.D. Ill. July 26, 2018).

## III. MR. MCNALLY'S NEW "UNRETAINED-EXPERT" OBJECTION FAILS

Mr. McNally objects for the first time in his Opposition that Rule 45(d)(3)(B)(ii) shields the monthly reports as unretained expert opinion materials. Opp. at 15. Under that Rule, a court "may, on motion, quash or modify" a subpoena seeking "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." This objection fails for multiple reasons.

***First***, Mr. McNally did not raise it in his objections to the subpoena, *see* Mot. Ex. G at 3–4, ECF No. 1-10—or in any of the meet-and-confer calls or correspondence that followed. It is therefore waived. *Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co.*, No. 16 C 4877, 2017 WL 440730, at *6 (N.D. Ill. Feb. 1, 2017) (party waived objection by failing to raise it when responding to discovery request); Fed. R. Civ. P. 45(d)(2)(B) (objections "must be served" before

response deadline).[6]

***Second***, the monthly reports describe "specific occurrences in dispute." The Consent Decree directs the Monitoring Trustee to report on T-Mobile's sale of the divestiture assets, its compliance with its obligations to make cell sites and retail locations available to DISH, and DISH's progress toward using those assets to operate a retail mobile wireless network. *See* Mot. Ex. B § XII.B, ECF No. 1-5. Those events are central to the underlying action, and material describing them falls outside the Rule. *See In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 77 (D. Mass. 2006) (because plaintiffs "sought factual information from [the nonparty] 'describing specific events [and] occurrences in dispute' in the antitrust litigation, such information is not shielded by" the Rule (citation omitted)).[7]

***Third***, Movants are not seeking Mr. McNally's expert opinion. Rule 45(d)(3)(B)(ii) exists to protect unretained experts from essentially being conscripted into a dispute for free.[8] The Rule accordingly asks "the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony," and distinguishes "testifying to a previously formed or expressed opinion" from "forming a new one." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 822

---

[6] Moreover, relief under Rule 45(d)(3)(B) is available only "on motion"—*i.e.*, on a motion to quash or modify a subpoena, which Mr. McNally has not filed.

[7] Mr. McNally's objection cannot be reconciled with his offer to provide Movants a declaration stating "whether T-Mobile and DISH were in compliance with the obligations that the Trustee monitors" in lieu of the monthly reports. Opp. Ex. D at 2. He cannot volunteer those averments, fault Movants for refusing to settle for them, and argue that the Rule protects them. *See* Opp. at 12, 15–16.

[8] Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment (describing Rule 45(d)(3)(B)(ii) as "provid[ing] appropriate protection for the intellectual property of the non-party witness," addressing a "growing problem" of "the use of subpoenas to compel the giving of evidence and information by unretained experts" who are "denied the opportunity to bargain for the value of their services").

(2d Cir. 1976)). Here, Movants ask Mr. McNally to produce existing documents reflecting his factual findings—not to form an opinion or perform any new analysis.[9] *See Pub. Offering PLE*, 233 F.R.D. at 77 ("Discovery of . . . purely factual information does not comprise the 'intellectual property' of [a witness] and is therefore not protected . . . ." (citation omitted)).[10]

## IV. DISH'S PRODUCTION OF POST-JUNE 2024 MONITORING TRUSTEE SUBMISSIONS UNDERCUTS MR. MCNALLY'S TIME-PERIOD OBJECTION

Mr. McNally also objects to producing reports created after June 2024, tying his objection to the discovery periods governing custodial productions that plaintiffs negotiated with T-Mobile and DISH in the underlying action. Opp. at 13. Yet, since Movants filed the Motion, DISH has produced its own submissions to the Monitoring Trustee for the period after June 2024. *See* Sept. 9, 2026 Joint Status Report at 4, *T-Mobile*, ECF No. 389. There is no basis to hold his reports to an earlier cutoff.

## V. CONCLUSION

For these reasons and those in the Motion, Movants respectfully request that the Court grant the Motion and order Mr. McNally to produce all monthly reports prepared by the Monitoring Trustee appointed in *United States v. Deutsche Telekom AG*, No. 1:19-cv-02232 (D.D.C.), that are within his possession, custody, or control.

---

[9] This case is not like *Yost v. Carroll*, Opp. at 15, where the movant sought to conscript an unretained tax attorney with "no firsthand information" about the underlying facts as an "involuntary expert in support of their legal theory regarding federal gift tax requirements," No. 20 C 5393, 2022 WL 3594643, at *2–5 (N.D. Ill. Aug. 23, 2022). The monthly reports are existing factual records concerning the dispute at issue, not new expert opinion material.

[10] Even so, a court may order production of material protected under Rule 45(d)(3)(B)(ii) where the requesting party shows "a substantial need for the . . . material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(C)(i). This Court applied that standard as to DISH's production: the competitive role DISH did or did not fill after the merger is "[o]ne of the principal arguments in this case," and its materials "cannot be procured elsewhere without undue hardship." *Dale*, 2025 WL 4059469, at *5–6. The same is true of the monthly reports.

Dated: September 30, 2026

Respectfully submitted,


*/s/ Jeremy Gradwohl*

Jeremy Gradwohl
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-5801
jgradwohl@bergermontague.com

Kyla Gibboney (*pro hac vice*)
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Phone: (415) 689-9292
kgibboney@bergermontague.com