**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY DALE, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERRY, on behalf of themselves and all others similarly situated, | ) | No. 26-cv-9778 |
| | ) | Judge Thomas M. Durkin |
| Movants, | ) | Magistrate Judge Albert Berry III |
| v. | ) | |
| EDWARD E. MCNALLY, | ) | |
| Respondent. | ) | |

## ORDER

For the reasons discussed more fully below, the Motion to Compel Compliance with Subpoena to Nonparty Edward McNally [1] is denied.

## BACKGROUND

The subpoena at issue in the instant matter is related to another case currently pending before this Court, *Dale v. Deutsche Telekom AG*, Case No. 22-cv-3189 ("the Underlying Suit").[1] The Movants here are plaintiffs in the Underlying Suit who are customers of AT&T Mobility LLC ("AT&T") and Verizon Communications, Inc. ("Verizon"); they have sued T-Mobile US, Inc. ("T-Mobile") alleging that T-Mobile's 2020 merger with Sprint lowered competition in the wireless services market, which in turn allowed AT&T and Verizon to raise prices and harm Plaintiffs.

The 2020 merger triggered an antitrust enforcement action (the "Enforcement Action") by the United States Department of Justice (the "DOJ"). The Enforcement Action ended with a

[1] The Court limits its background discussion to those facts necessary to decide the instant motion and directs the reader to the Underlying Suit for a more detailed description of the facts.

consent judgement, in which the parties agreed to hire a Monitoring Trustee who was "required to investigate and report on the Defendants' compliance with this Amended Final Judgment and the Stipulation and Order, and the Defendants' progress toward effectuating the purposes of this Amended Final Judgment, including but not limited to: Divesting Defendants' sale of the Divestiture Assets, Divesting Defendants' compliance with its requirements to make Cell Sites and Retail Locations available to Acquiring Defendant, and Acquiring Defendant's progress toward using the Divestiture Assets and other company assets to operate a retail mobile wireless network." (Dkt. 10-1 at § XII.B). The Monitoring Trustee was then required to file monthly reports with the DOJ "setting forth Defendants' efforts to comply with Defendants' obligations under this Amended Final Judgment and under the Stipulation and Order," which would not be filed to the docket if they contained information that the Monitoring Trustee deemed confidential. (*Id*. at § XII.H). These reports have only been provided to the DOJ and have not been provided to any other entity. (Dkt. 10 at 4).

As part of the Underlying Suit, Movants served a subpoena on the current Monitoring Trustee, Edward E. McNally (previously, Theordore W. Ullyot had served as Monitoring Trustee); through the meet and confer process, the scope of the subpoena was whittled down to the monthly reports. (Dkt. 10 at 9). The Monitoring Trustee objected to producing the reports, and the instant motion to compel seeking production of the reports was filed on July 22, 2026, before being transferred to this District on August 13, 2026. This Court ordered briefing of the motion to compel from Movants and the Monitoring Trustee, which was completed on September 30, 2026. (Dkt. 6, 10, 15-16). Additionally, the DOJ filed a statement of interest in opposition to the motion to compel, and Movants filed a response to that statement of interest. (Dkt. 14, 17). A motion hearing was held on October 6, 2026, and the Court ordered the Monitoring Trustee to randomly select

eight reports for an *in camera* review. (Dkt. 18). The Court has reviewed all the briefing and the materials submitted by the Monitoring Trustee and this matter is ripe for disposition.

**DISCUSSION**

The DOJ argues that the subpoena to the Monitoring Trustee imposes an undue burden because disclosure would harm the DOJ's ability to engage in enforcement activities in the Underlying Suit and in other cases with trustees aiding with consent decree compliance.[2] (Dkt. 14 at 5-7). According to the DOJ, monitoring trustees and their confidential reports are an important enforcement tool for the government to ensure ongoing compliance in enforcement actions with consent decrees, and opening up those reports to disclosure "would make it less likely that future defendants would agree to the use of a trustee." (*Id.* at 8). More immediately, the reports in the Enforcement Action "represent a critical component of the United States' ongoing law enforcement interests in ensuring that T-Mobile and DISH comply with the Final Judgment"[3] and "[d]isclosure of the Confidential Reports here would harm those interests by revealing to T-Mobile the confidential work product developed by the Trustee and the Antitrust Division and reflected in the Confidential Reports." (*Id.* at 7).

Federal Rule of Civil Procedure 45(d)(3)(iv) requires a court to quash or modify a subpoena if it subjects a person to an undue burden.[4] As explained in a leading treatise:

---

[2] The DOJ has standing to challenge the subpoena pursuant to 28 U.S.C. § 217, to 28 USC § 517, which states that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."

[3] As noted in the Underlying Suit, DISH's role in the merger between Sprint and T-Mobile was crucial to the merger's ratification because DISH agreed to take certain actions that would supposedly ensure adequate competition in the wireless telecommunications market. *See Dale v. T-Mobile US, Inc.*, No. 22-CV-3189, 2025 WL 4059469, at *1 (N.D. Ill. Oct. 3, 2025). Plaintiffs' position in the Underlying Suit is that DISH did not comply with these requirements and any efforts to do so were doomed from the start.

[4] Although this matter was initiated as a motion to compel, the Court construes Defendant's response brief and the DOJ's brief as a motion to quash, as discussed during the hearing before this Court. The Court does not believe that the available relief should be dictated by which party wins the race to the courthouse. In other words, Defendant and the DOJ should not be prevented from arguing in favor of quashing or modifying the subpoena because Plaintiff filed a motion to compel before they could file a motion to quash.

> The words "undue burden" in Rule 45(d)(3)(A)(iv) replace the traditional language of "unreasonable and oppressive," however, this change in the language for quashing a subpoena is semantic only, and was not intended to change existing law. Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(d)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena. The determination of a subpoena's reasonableness requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source.

9A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2463.1, Quashing or Modifying a Subpoena (3d ed.). In this District, "whether to quash a subpoena [as unduly burdensome] rests squarely within the court's discretion, *Griffin v. Foley,* 542 F.3d 209, 223 (7th Cir. 2008), with due consideration to the following factors: '(1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit.'" *Tate v. City of Chicago*, No. 18 C 7439, 2020 WL 4437853, at *3 (N.D. Ill. Aug. 3, 2020) (quoting *Taylor v. City of Chicago*, 2015 WL 6561437, at *3 (N.D. Ill. 2015)). "Regarding burden, courts must assess more than mere 'administrative hardships' and, instead, should consider the myriad interests that production might compromise or injure." *Taylor*, 2015 WL 6561437, at *3 (quoting *Patterson v. Burge,* No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005)).

The Court finds that these factors weigh in favor of quashing the subpoena. Admittedly, some of the elements cut in favor of production. For example, producing the reports will lead to the production of relevant information. Although the movants and respondents spent a significant

amount of time arguing about the relevance of these materials, the Court believes that this issue was fairly settled when the Court ordered DISH to produce its own internal communications and documents related to the Monitoring Trustee's ongoing reporting efforts. *Dale*, 2025 WL 4059469, at *3, 6. If those materials are relevant, the reports based on those materials are also relevant. However, the Court believes that the remaining factors support quashing the subpoena. The reports are synthesized from information that DISH and T-Mobile have provided to the Monitoring Trustee. As such, the reports are likely to be cumulative and duplicative of the information that this Court has already ordered to be produced. Similarly, the information in the reports is readily obtainable from other sources because the Court has already ordered DISH to produce the information that forms the basis of the Monitoring Trustee's reports. In fact, the Court has already ordered other third parties to turn over *more* than is included in the reports because DISH was ordered to produce internal communications about their reporting in addition to the information that was ultimately provided to the Monitoring Trustee. *Id.* at *5-6.

Finally, the Court finds that burden of producing the reports outweighs the likely benefit. As noted above, the Court does not think the likely benefit of the reports is going to be very high because much of the factual basis of those reports can be gleaned from the materials the Court has already ordered DISH to produce. On the other hand, the burden to the DOJ would be very high if the Court ordered the Monitoring Trustee to produce the reports. Although the administrative burden to produce the reports would be low, other important interests of the DOJ would be severely impacted by production. These reports have only been exchanged between the DOJ and the Monitoring Trustee and have been kept completely confidential. (Dkt. 10 at 4). The confidential nature of these reports allows the Monitoring Trustee's team (which includes engineers and financial experts) to share unvarnished views of compliance by T-Mobile and DISH with the

consent decree in the Enforcement Action, and vice versa; the DOJ can share information gained through its enforcement efforts, which may be reflected in the reports. (Dkt. 14 at 7). Furthermore, the confidential nature of the reports increases the likelihood of transparency in the information shared by DISH and T-Mobile with the Monitoring Trustee and any witnesses interviewed by the Monitoring Trustee. Not only would production of these reports have a chilling effect on the Monitoring Trustee and the DOJ in the Enforcement Action, the specter of production would likely affect other enforcement actions where a trustee is appointed to review compliance. As the DOJ points out, it regularly uses trustees in cases with consent decrees; there have been five such cases since January 2025, and 15 more cases since 2016. (Dkt. 14 at 7-8). These enforcement concerns greatly outweigh the minimal benefit Plaintiffs would gain from receiving the Monitoring Trustee's reports in the Court's view. And this factor similarly outweighs all other factors in considering whether the subpoena here subjects any person to an undue burden. Because it does, the Court quashes the subpoena pursuant to Rule 45(d)(3)(A)(iv).

The Court rejects Plaintiffs arguments to the contrary. Initially, the Court notes that Plaintiffs do not cite any case law – nor has the Court found any in its independent research – where a court ordered the production of confidential monitoring reports from a trustee appointed to ensure compliance with a consent decree in an enforcement action where those reports had only been shared with the relevant enforcement agency. Plaintiffs argue that "[t]o the extent the concern is that trustees would be less candid if their reports could be produced in civil discovery, that concern assumes trustees would temper their reporting to the Justice Department out of concern for private litigation." (Dkt. 17 at 8). This contention does not fully grasp the nature of the concerns raised by the DOJ. The concern is not only that the trustee will be less than candid, but that the parties being monitored and any witnesses being interviewed by a monitoring trustee may be less

than candid if they reasonably fear disclosure of their statements or information in future civil discovery.

Next, Plaintiffs argue that the DOJ "offers no reason to believe that any defendant has ever reasoned" that the prospect of disclosure of a monitoring trustee's report in civil litigation would render defendants less likely to agree to the use of monitoring trustees in enforcement actions. (*Id.*). As noted above, the DOJ is unable to offer such evidence because no court has ever ordered disclosure of trustee reports in a case similar to this one. To the Court, it makes sound logical sense that the risk of future disclosure to civil litigants (some of which may be competitors) would weigh against the choice to use a monitoring trustee in an enforcement action. That is not to say that no defendant would ever choose to agree to appointing a monitoring trustee, but the new possibility of future discovery may dissuade some litigants from choosing to rely on monitoring trustees, which would in turn hurt the DOJ's enforcement by removing a useful tool from its enforcement toolbox.

Finally, Plaintiffs argue that production is not prevented by the final judgment in the Enforcement Action and that the Confidentiality Order entered in this case sufficiently protects the Monitoring Trustee and the DOJ. (Dkt. 17 at 4-6, 9). The Court disagrees. The Court's ruling is dictated by Rule 45, and not the final judgment or the Confidentiality Order. The Court is not holding that the consent decree or final judgment in the Enforcement Action prevents future disclosure, nor does it need to, to find that production of the reports would constitute an undue burden on the DOJ. Nor does the existence of the Confidentiality Order mandate production of all confidential materials Plaintiffs seek from other parties or third parties; the materials still need to be relevant and necessary to the case to outweigh the harm that disclosure would cause. *See* 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2043,

Protection for Confidential Information (3d ed.) ("If it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information"). Here, the confidential reports are not necessary to the case because they are duplicative of information that will be and has been produced elsewhere in discovery. And the harm from disclosure is not prevented by the Confidentiality Order. The DOJ's concern is not that Plaintiffs will disseminate the Monitoring Trustee's reports beyond the Underlying Suit or violate the Confidentiality Order. The problem is that production of any sort beyond the confidentiality maintained between the Monitoring Trustee and the DOJ will have a chilling effect on this and other enforcement actions, which the Court finds to be true, as discussed herein. The Confidentiality Order does nothing to allay those unique burdens faced by the DOJ. As such, it does not provide a valid reason to order production.

Although this ruling would be enough to quash the subpoena, the Court notes that the forgoing discussion applies with equal force to the Monitoring Trustee itself; the aforementioned factors weigh in favor of quashing the subpoena. The subpoena calls for relevant information, but that information is largely duplicative and cumulative of information Plaintiffs can (and will) receive from other sources. And the small likely benefit Plaintiffs might get from the reports is outweighed by the burden to the Monitoring Trustee. While the Monitoring Trustee does not have the same broader policy considerations as the DOJ, the Monitoring Trustee still faces significant non-administrative burdens if forced to produce his reports. The Monitoring Trustee has maintained the confidentiality of the reports, and there was no expectation that these reports would be subject to civil discovery when they were created; requiring their production could interfere with the Monitoring Trustee's full candor with the DOJ and weaken the Monitoring Trustee's

ability to receive full transparency from the entities he is tasked with monitoring. Production of the reports would negatively impact the Monitoring Trustee's important role in the antitrust compliance in the Enforcement Action. These burdens outweigh the benefit of production and support quashing the subpoena as unduly burdensome.

**CONCLUSION**

For the reasons discussed above, the Motion to Compel Compliance with Subpoena to Nonparty Edward McNally [1] is denied.

DATED: November 20, 2026

Albert Berry III
United States Magistrate Judge